# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION

| | |
|---|---|
| AMY CARPENTER, : | |
|     Plaintiff, : | |
| : | |
| V. : | CASE NO: 3:07-CV-0051-WKW-CSC |
| : | |
| REGIS CORP. INC., : | |
|     Defendant. : | |

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, **AMY CARPENTER**, by and through her attorney Benjamin H. Parr, and responds to the Defendant's Motion for Summary Judgment as follows:

### INTRODUCTION

Plaintiff, Amy Carpenter (hereinafter "Plaintiff" or "Carpenter"), was an employee of Regis Corporation (hereinafter "Regis"). Plaintiff contends that she was discriminated against in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Further, Plaintiff asserts that she was discharged in retaliation for filing a complaint and engaging in protected activities with the Equal Employment Opportunity Commission. Plaintiff filed the subject action on 5 June 2007.

### NARRATIVE STATEMENT OF FACTS

Plaintiff was hired as a stylist for a Regis Salon in November 2005. Plaintiff worked under the supervision of Salon Manager Amy Grace, and Supervisor Delise Burdette. Grace and Burdette are both Caucasian. Plaintiff was passed over for promotion in late

June or early July 2006 in favor of Kathryn Kilgore, who is Caucasian. Kilgore resigned after only one week as Salon Manager, and Carpenter was promoted. Carpenter alleges that she did not receive the same level of training as Kilgore when she was promoted to manager. After several weeks as manager, on or about August 10, 2006, Carpenter was demoted to stylist and transferred to another salon. When she was demoted, Burdette told Carpenter that she was "low class," had a "low class clientele," and "that was not what [Regis] wanted."

Once Carpenter was transferred to the new location, she was not allowed to bring her "ethnic products" and Marcel irons with her. The absence of these products prevented Carpenter from properly styling her client's hair.

On 14 August 2006, Carpenter called the EEOC and complained of her treatment. (Ex. A Bates no. D-00190). On 16 August 2006, Carpenter called and made a complaint to Amy Edwards at the Regis corporate office. At Edwards' request, Carpenter faxed certain documentation, including the controversial recommendation letter from Amy Grace. In response to Carpenter's complaint, Toni Alvarez came to the area to investigate the complaint on 17 August 2006. During their conversation on 17 August 2006, Carpenter reported to Alvarez that she had made a complaint to the EEOC. Carpenter was discharged on 18 August 2006. Among the reasons for the discharge was that she had made a complaint without a good faith basis. Defendant also offers other non-discriminatory reasons for its actions, including 1) that Kilgore was more qualified than Carpenter, 2) that Burdette properly trained Carpenter, 3) that Carpenter called Amy Grace instead of Burdette, violated time clock policies, and had excessive complaints, and 4) Carpenter engaged in a sexual conversation, refused to perform hair services, and

made accusations against Burdette.  Carpenter had offered evidence that all of the proffered reasons are pretextual or contested.

## ARGUMENT

Carpenter asserts four distinct categories of discrimination:  1) She was denied promotion in favor of a Caucasian employee, 2) she received disparate training, 3) she was demoted from Salon manager back to stylist, and 4) her termination.  Carpenter does not allege that these four categories should be viewed as isolated events but as a series and pattern of discriminatory conduct.  Carpenter further claims that she was terminated in retaliation for engaging in protected activities, namely her communication with the EEOC.  Carpenter is required to make a *prima facie* showing that discrimination occurred, and rebut each proffered non-discriminatory reason for the challenged action McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The Defendant may not use proffered non-discriminatory reasons as a pretext for the discrimination prohibited. Id. at 804.  Defendant may use legitimate non-discriminatory reasons for its actions, but only if those criteria are applied equally to members of all races.  *See* Id.

I. CARPENTER HAS MET HER BURDEN ON THE ISSUE OF DENIAL OF PROMOTION

To make a *prima facie* case on the denial of promotion, Carpenter must show that 1) she is a member of a protected class, 2) she was qualified for and applied for the position, 3) despite being qualified, she was rejected, and 4) the position was filled with an individual outside the protected class.  It is undisputed that Carpenter is African-American, and thus a member of a protected class (Carpenter depo at 38:2).  She was

qualified and applied for the position. (Carpenter depo., at 38-45). She was denied the position. (Carpenter depo at 37:15-17) The position was filled with someone from outside the protected class. (Carpenter depo at 37:22). Therefore, a *prima facie* showing has been made. Defendant does not allege in its motion for summary judgment that a *prima facie* showing has not been made, only that there were valid, non-discriminatory reasons for its actions.

   The only nondiscriminatory reason put forth by the Defendant on this issue is that Burdette subjectively believed the Caucasian to be better qualified. (Def. Motion at 19). Despite Defendant's assertions to the contrary, Carpenter can and does dispute that Kilgore was promoted because of her superior customer service skills. The only evidence proffered by the Defendant is the statement of Ms. Burdette herself. Burdette alleges that several complaints had been made against Carpenter preceding the decision to promote Kilgore. However, Burdette's own declaration and exhibits attached to the Defendant's motion show only one documented complaint, an instance where clippers cut a customer's ear, Carpenter handled this issue, and no complaint was made in the store. (Burdette Decl., Ex. 2 at page 4). Further, Burdette asserts that Kilgore had been employed for 15 months, while Carpenter had only been employed for seven months (Burdette Decl.). While Carpenter had been employed at Regis for seven months, Kilgore had been employed for only four consecutive months. Kilgore had resigned previously for a period of several months (Burdette Decl.). Both individuals had previous salon experience (Burdette Decl. and Carpenter depo at 14-15). There is a material issue of fact on the issue of denial of promotion, as the jury is entitled to choose which witnesses to believe. Carpenter presents circumstantial evidence that the denial of

promotion was based on a discriminatory reason, and Defendant presents arguable subjective conclusions by Burdette that it was not. These are issues for the jury to decide.

    II.    CARPENTER HAS MET HER BURDEN ON THE ISSUE OF DISPARATE TRAINING

Carpenter testified at deposition that she did not receive the same level of training the Kilgore received. (Carpenter depo at 200-205) Defendant asserts that since Burdette provided her *some* training, this claim must fail. The disparate treatment clearly establishes a genuine issue of material fact to present this issue to the jury. Further, Carpenter's lack of training contributed to her demotion (Carpenter depo at 205:7-10). Many of the issues Defendant claims supported Carpenter's termination arose because of a lack of training. Carpenter and Burdette disagree on the amount of time Burdette spent training Carpenter, but the weight to give each individual's testimony is for the jury. If the jury believes Ms. Carpenter's version of events, a genuine issue of material fact has been presented.

    III.    WHILE CARPENTER'S ALLEGATION OF DISCRIMINATION IN HER DEMOTION MAY NOT STAND ALONE, SHE HAS MET HER BURDEN ON THIS ISSUE IN CONJUNCTION WITH THE OTHER ALLEGATIONS

Carpenter alleges that there was a discriminatory purpose in her demotion. There are several non-discriminatory reasons put forth by the Defendant for Carpenter's demotion. Among these allegations is that there were several complaints received during Carpenter's time as manager. Further, Defendant claims that no reasonable person could

believe that Burdette promoted Carpenter only to discriminate against her later. This argument weakens the Defendant's argument that Ms. Carpenter was not qualified for the position she was originally denied, since she was apparently qualified one week later. The record reflects that Burdette promoted Carpenter after her preferred Caucasian choice resigned and her hand was forced. Burdette then failed to properly train Carpenter, demoted and discriminated against her after her demotion, and terminated her. While the demotion might not stand alone as a cognizable act of discrimination, when viewed in the series of discriminatory actions committed by the Defendant, the circumstantial evidence presented by Carpenter clearly creates a genuine issue of material fact to submit the issue to the jury.

## IV. CARPENTER HAS MET HER BURDEN ON THE ISSUE OF DISCRIMINATION IN HER TERMINATION

Carpenter does not argue that her race and discrimination on account of her race was the primary reason for her termination. Rather, Carpenter asserts and has produced circumstantial evidence that the primary reason for her termination was her communication with the EEOC. However, race discrimination was a contributing factor to her termination (Carpenter depo at 205:20). The discrimination by the Defendant, through Burdette, culminated in Carpenter's termination. The non-discriminatory reasons put forth by the Defendant are pretextual.

A. <u>Two complaints are allegedly received</u>

Defendant alleges that two complaints were received on 15 August 2006. The first involved an alleged sexual conversation at the workplace. The alleged sexual conversation had already been handled by counseling and the institution of a sixty day probationary period (Carpenter depo Ex. 12). Plaintiff denies that this conversation was sexual or inappropriate, but even assuming it was, action had already been taken by Defendant, and further action was only taken after the discovery of the EEOC communication. The second alleged complaint was that Ms. Carpenter refused to perform hair services on a client. The failure to perform that service was the result of the refusal of the Defendant to allow Carpenter to bring her products and tools to her new location (Carpenter depo at 115-117). Defendant's records of this alleged complaint show that Carpenter indicated she was not allowed to bring the required products, and that the manager "feels [Carpenter] is setting up the salon for a harassment case." (Carpenter depo Ex 7A, Bates page no. D-00186). Further, the records show that the manager was ordering more "ethnic" hair products, supporting Carpenter's claim that the necessary products were not available. (Id.)

B. <u>Carpenter makes a complaint against Delise Burdette</u>

Defendant alleges that Carpenter was terminated in part due to her complaint against Delise Burdette. This complaint forms the basis of her EEOC complaint. Defendant alleges that Carpenter did not complain of race discrimination in her call to Amy Edwards (Defendant's Brief at 9). However, a review of the deposition transcript shows

that Carpenter could not remember the exact language used, but that she complained of her treatment and told Amy Edwards that she had made a claim with the EEOC (Carpenter depo at 144-152). Further, Carpenter testified that she told Amy Edwards on 16 August that she was being discriminated against (Carpenter depo at 148:16). Carpenter's testimony is in direct contradiction to the Defendant's assertions. Finally, Defendant's records show that the Defendant believed a "harassment" issue was being raised by Carpenter (Carpenter depo Ex 7A).

The basis of Defendant's argument for summary judgment on this issue is that the Defendant's witnesses contradict Carpenter's account. Whom to believe is an issue for the jury, and the testimony clearly shows a genuine issue of material fact for trial.

V. CARPENTER'S CLAIMS OF DISCRIMINATION SHOULD BE VIEWED IN THEIR TOTALITY AS A SERIES OF DISCRIMINATORY ACTIONS, AND SHE HAS MET HER BURDEN ON THE ISSUE OF RACE DISCRIMINATION

Carpenter alleges that the conduct of the Defendant should be viewed in its totality, and not as individual, isolated incidents. The allegations of discrimination in promotion, denial of equal training, demotion, and termination, when viewed in isolation, are much less convincing than when the actions are viewed together. The series of actions show a discriminatory pattern by the Defendant leading to Carpenter's termination. Defendant does not dispute that Plaintiff has made a *prima facie* case, but asserts that the proffered non-discriminatory reasons meet that *prima facie* case and entitle Defendant to summary judgment. The courts have held that "the ultimate burden of persuasion rests with the

plaintiff who must show that the proffered legitimate reasons for the different … actions were pretextual thereby permitting, but not compelling, the trier of fact to conclude that the employment action at issue was the product of illegal discrimination**.**" <u>Alexander v. Fulton County</u>, 207 F. 3d 1303, *citing* <u>Texas Dept. of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 256.  The conflicting testimony clearly presents an issue for the trier of fact to determine.  When viewed in a light most favorable to the Plaintiff, the jury could clearly conclude that Carpenter should be believed, and her version of events, especially when viewed in totality, presents sufficient evidence to support a finding of discrimination.

VI.   DEFENDANT'S ARGUMENT THAT CARPENTER'S EEOC COMPLAINT DIS NOT CONSTITUTE OPPOSITION TO UNLAWFUL PRACATICES IS WITHOUT MERIT

Defendant finally argues that the complaint made by Carpenter to the EEOC was insufficient to constitute opposition to unlawful practices (Defendant's brief at 29).  While Ms. Carpenter's recollection of the call at deposition was incomplete, the EEOC's intake notes show that Carpenter did complain of discrimination during the initial call (Ex. A, Bates number D-00190).  The notes reflect that Carpenter complained that a white applicant was given a job and that she was demoted for attracting "low class clientele."  (Id.).  As previously noted, the Defendant was well aware of the nature of Carpenter's complaints prior to the internal investigation, and Carpenter indicated that she informed both Alvarez and Edwards of her complaints to the EEOC.  "[Plaintiff] must, at the very least, communicate her belief that discrimination is occurring to the employer."  <u>Webb v. R&B Holding Co., Inc.</u>, 992 F. Supp 1382, 1389, *citing* <u>Jurado v. Eleven-Fifty Corp.</u>, 813 F. 2d 1406, 1411.  Clearly, the evidence shows that Carpenter communicated to both Edwards and Alvarez sufficient information to show that she was

complaining of discrimination, and that the Defendant was aware of her complaints. Thus, Plaintiff has met her burden to show that she opposed the unlawful practices, and has previously shown that the proffered non-discriminatory reasons were pretextual.

## CONCLUSION

For the foregoing reasons, Plaintiff has shown that the Defendant is not entitled to summary judgment, and respectfully requests that the Court deny the motion.

Respectfully submitted this the 31st day of March 2008.

   //s// Benjamin H. Parr_____
Benjamin H. Parr (ASB-7490-I37P)
Attorney for Plaintiff
Benjamin H. Parr
Ingrum, Rice, & Parr, LLC
410 Second Ave.
Opelika, AL 36801
(334) 745-3333

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this day delivered a true and correct copy of the foregoing PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT to the attorney for the Defendant, Hon Brian Bostick, by electronic filing on this the 31st day of March 2008.

   //s// Benjamin H. Parr\_\_\_\_
Benjamin H. Parr
Attorney at Law
410 Second Avenue
Opelika, Alabama 36801
Telephone Number: (334) 745-3333
Facsimile Number: (334) 745-3155

: 08/31/2006      QUAL EMPLOYMENT OPPORTUNITY COMMI... ON      Page 2 of 2
: 09:55:40      Charge Detail Inquiry

| CHARGE # 420-2006-04443N | FORMALIZED OFFICE | UNIT 1 | STAFF Stephanie Wright | DATE INITIAL INQUIRY | 08/14/2006 |
| LEAD CHARGE # | ACCOUNTABLE OFFICE 420 | | | DATE FIRST OFFICE | |
| | | | | DATE DISTRICT | |
| | | | | THIS OFFICE DATE | |

**CHARGING PARTY INFORMATION**
Carpenter, Amy
Post Office Box 2254

Opelika (C)    AL    36803    Country USA
Home (334) 444-0616    Work
SSN      Date Of Birth 11/22/73
Sex F    Race B    Nat Origin O

CONTACT

No (334)-448-7471

Phone
Email Address    Country

**RESPONDENT INFORMATION**
HAIR MASTERS
1530 E. Glenn Avenue
Suite B
Auburn    AL    36830    Country USA
Phone      FAX
R Type E    EEO #    EEO FUN    SMSA 9999
SIC Codes

CONTACT

Phone    Country
Email Address

**PROCESSING INFORMATION**
Deferral Office      Source Of Complaint    A      Processing Type    O      Processing Category
Staff    Angela Morrissette      Staff Assigned Date    08/31/2006      Staff Function/Unit    I1
Last Action    08/31/2006 2 G1 Assigned To Staff Office: 420 F/U: I1 Del:A
Final Closure Action
Subpoena:    Suspense:    Transfer From:

ALLEGATIONS    Stylist
BENEFITS

**ACTION HISTORY**

| Date | Seq | Code | Description | Attributes | Office | F/U | Del |
|---|---|---|---|---|---|---|---|
| 08/15/2006 | 1 | G1 | Assigned To Staff | 1:MAG 2:A | 420 | I1 | |
| 08/31/2006 | 2 | G1 | Assigned To Staff | 1:ABM 2:W | 420 | I1 | |

---

- sounds like enough to draft chg.

- July 1, 2006 cp applied + it was given to W/F. She quit after 7 days. Cp was given the job.

- 8/11/06 demoted because she was attracting the [way?] to low-class clientele

Ex. 'A'