IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

AMY CARPENTER,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )    CASE NO. 3:07-CV-501-WKW [WO]
                                  )
REGIS CORP. INC.,                 )
                                  )
            Defendant.            )

**MEMORANDUM OPINION AND ORDER**

This case is before the court on Defendant's Motion for Summary Judgment (Doc.
# 11), which is accompanied by a brief (Doc. # 12) and evidentiary submission (Doc. # 13).
Plaintiff filed a response in opposition to summary judgment (Doc. # 21) with a brief (Doc.
# 22), to which Defendant replied (Doc. # 25).  After careful consideration of the arguments
of counsel, the relevant law and the record as a whole, the court finds that the motion is due
to be granted.

**I.  JURISDICTION AND VENUE**

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for all
claims arising under federal law.  The court also has original jurisdiction over claims based
upon violations of civil rights.  *See* 28 U.S.C. § 1343.  The parties do not contest personal
jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II. FACTS AND PROCEDURAL HISTORY

This lawsuit arises out of Defendant Regis Corp. Inc.'s ("Regis") employment actions against Plaintiff Amy Carpenter ("Carpenter") when she worked as a hair stylist and manager at Regis's hair salons in Auburn and Opelika, Alabama.[1]  Regis hired Carpenter, who is African-American, as a stylist at an Auburn salon in November of 2005.  (Br. in Supp. of Summ. J., 2; Resp., 1.)  In late June or early July of 2006, the position of Salon Manager opened up.  (Br. in Supp. of Summ. J. Ex B (Burdette Decl. ¶ 3).)  The Area Supervisor for Regis, Delise Burdette ("Burdette"), promoted Katherine Kilgore ("Kilgore"), a Caucasian stylist in a different Auburn salon, to the position of Salon Manager instead of Ms. Carpenter and another Caucasian candidate.  (Burdette Decl. ¶¶ 2-4; Compl. ¶ 9.)  Kilgore had worked intermittently for Regis for a total of fifteen months and according to Burdette, had "demonstrated successful customer service skills," which is "very important" to holding a managerial position successfully; Carpenter, on the other hand, had been with the company only seven months and "had failed to demonstrate customer service skills" that matched Kilgore's, and had received customer complaints.  (Burdette Decl. ¶ 5. & Ex. 2.)  When Kilgore assumed the managerial position, Carpenter testified that Burdette spent three or four

---

[1] Carpenter has provided little by way of evidentiary citations in her response to Regis's motion for summary judgment.  It is not the court's function to weed through the summary judgment submissions in search of evidence to support Carpenter's position.  *See Freeman v. City of Riverdale*, No. 1:06-cv-2230, 2007 WL 1129004, at *6 (N.D. Ga. Apr. 16, 2007) (citing Eleventh Circuit cases); (*see also* Uniform Scheduling Order § 2 (Doc. # 9)).  Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

days with Kilgore, training her to manage the store.  (Br. in Supp. of Summ. J. Ex. A (Carpenter Dep. 204, Jan. 30, 2008).)

Kilgore left after a week, though, and Burdette offered Carpenter the Salon Manager position, which she assumed on July 11, 2006.  (Burdette Decl. ¶¶ 6-7.)  Burdette placed Carpenter on a ninety-day probation period.  (Burdette Decl. ¶ 7.)  Burdette gave Carpenter reading materials on how to manage a salon (Carpenter Dep. 33-34) and spent two days at the salon training Carpenter (Burdette Decl. ¶ 8).  Soon after the promotion, Burdette discovered evidence that Carpenter had violated the time clock and scheduling policies by bringing her children to work, leaving the salon during shifts and while on the clock, scheduling stylists for fewer evenings or weekends than expected, and frequenting the salon without authorization after business hours.  (Burdette ¶ 9.)  Burdette also received several complaints about Carpenter, some of which "went through the corporate office."  (Burdette Decl. ¶ 9 & Ex. 2.)  Burdette demoted Carpenter on August 10, 2006, and following Regis's policy for involuntary demotions, relocated her to a different salon in Opelika.  (Burdette ¶¶ 9-10; Carpenter Dep. 26.)

Carpenter had a tumultuous start at the Opelika salon.  Right away, a male customer complained about a sexual conversation that took place in the salon during his service.  (Carpenter Dep. 120-22; Burdette Decl. Ex. 3.)  The two women engaged with Carpenter in that conversation were in the service area but not receiving services (Carpenter Dep. 121-22, 131), and Carpenter understood that the applicable security regulations required keeping non-

3

employees out of the service area unless they were being served.  (Carpenter Dep. 104; Burdette Decl. Ex. 3.)  Amy Grace ("Grace"), the Store Manager, placed Carpenter on a sixty-day probation period and issued a warning to Carpenter detailing the complaint, which Carpenter opposed, claiming that the conversation was not sexual.  (Burdette Decl. Ex. 4; Carpenter Dep. 131.)    Another customer complained about Carpenter's cancelling her appointment.[2]  Carpenter had told the customer the salon could not provide her service because the products and tools needed for the service were not available.  (Carpenter Dep. 72.)  Carpenter testified that the needed relaxer and rinses were not in the salon and that she had been told there was no room for her Marcel irons, which she would have used on the customer's hair.  (Carpenter Dep. 72.)  Carpenter had assumed that the manager would provide these necessities and did not check in advance of the appointment to see whether the products and tools were available.  (Carpenter Dep. 77.)  According to Burdette, however, it was Carpenter's responsibility to ask Grace to order the products Carpenter preferred to use, and to transport her own tools.  (Burdette Decl. ¶ 15.)  When made aware of the problem, Burdette offered to bring Marcel irons from the Auburn salon right away (Burdette Decl. ¶ 16), an offer Carpenter claims she never personally received (Carpenter Dep. 76).

Aware of the two customer complaints, Carpenter then called the Regis corporate office, and spoke with Amy Edwards ("Edwards") to make a complaint that she was being treated unfairly (Carpenter Dep. 144), that she did not have what she needed for her job, that

---

[2] Apparently, yet another customer complained about the layering job done on her hair.  (*See* Burdette Decl. Ex. 2.)

employees were not making those necessities available, and that she was not making money. (Carpenter Dep. 147-48.) Carpenter does not recall whether she told Edwards that she was being discriminated against. (Carpenter Dep. 149.) Carpenter did tell Edwards that "she was not made available to use [her] ethnic products." (Carpenter Dep. 152.) Carpenter also sent Edwards, without Grace's permission, a supportive letter Grace had written in June to help Carpenter seek other employment. (Carpenter Dep. 169, 188, 196.)

In response to Carpenter's complaint, Regional Manager Toni Alvarez ("Alvarez") conducted an investigation at Carpenter's salon on August 17 and 18, 2006. (Br. in Supp. of Summ. J. Ex. C. (Alvarez Decl. ¶ 4).) In her declaration, Alvarez stated that Carpenter at no point complained that she was treated differently because of her race or felt that she was being discriminated against but Carpenter did complain of Burdette's allegedly telling Carpenter she could not "do ethnic hair or have ethnic hair products in the store."[3] (Alvarez Decl. ¶ 5.) Alvarez also noted Carpenter's complaint that Burdette told two co-workers Carpenter was "'low class and not management material'" (Alvarez Decl. ¶ 6), a claim Alvarez followed up on; the two co-workers told her that Burdette never referred to Carpenter as low class and one of them stated that Carpenter was pressuring her to say otherwise (Alvarez Decl. ¶¶ 13-14). Alvarez also heard from her discussions with co-workers that people Carpenter knew personally were spending time on the service floor, in

---

[3] Carpenter testified that she told Alvarez that she had called the EEOC, but she could give no reason why she had not written it down in notes she allegedly took of the conversation. (Carpenter Dep. 150.) Moreover, Carpenter's testimony is unclear about whether she complained to Alvarez about *racial* discrimination. (*See* Carpenter Dep. 150-152.)

violation of company policy (Alvarez Decl. ¶ 7), that Carpenter called Grace with problems, that Carpenter was a constant disruption at work, that she told lies about other employees (Alvarez Decl. ¶ 10), that Carpenter's recounting of one of the customer complaints was not true (Alvarez Decl. ¶ 11), that Carpenter was "always creating a negative environment," (Alvarez Decl. ¶ 14), and that Carpenter had doctored the letter Grace had written and had lied about that letter more generally (Alvarez Decl. ¶ 16). Alvarez also followed up on a customer complaint about being overcharged and determined that Carpenter had overcharged a customer. (Alvarez Decl. ¶ 17.)

Based on the misconduct that Alvarez had heard about, the customer complaints that Alvarez had substantiated, and the misconduct Alvarez had confirmed occurred, she decided to terminate Carpenter's employment. (Alvarez Decl. ¶ 18.) The termination form Alvarez completed cited violations of four company regulations for Carpenter's discharge – (1) for allowing persons other than employees behind the reception desk and in the service area; (2) for charging customers prices other than those on the salon's price list or as ticketed, unless authorized; (3) for using products other than "approved 'back-bar' items"; and (4) for other misconduct that adversely affects the company.[4] (Alvarez Decl. ¶ 18 & Ex. 4.)

---

[4] Alvarez cited the following conduct in support of her finding of misconduct otherwise adversely affecting the company: "lying during the investigation, misrepresenting what [Carpenter's] co-workers had allegedly said, altering and misrepresenting the nature of Grace's reference letter, attempting to pressure [Carpenter's] co-workers to lie, and creating an unpleasant working environment for her co-workers." (Alvarez Decl. ¶ 18.)

The EEOC sent Carpenter a right to sue letter in March 2007.  (Compl. Ex. A.) Carpenter sued Regis on June 7, 2007, alleging violations of 42 U.S.C. § 1981 for disparate treatment and unlawful discrimination, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e)-2000e-17 ("Title VII") for disparate treatment and unlawful discrimination, and Title VII for retaliation.  (Compl.)  Carpenter claims that because of her race, she was subject to four adverse employment actions: (1) a denied promotion; (2) disparate training; (3) a demotion from Salon Manager to stylist; and (4) termination that was both discriminatory and retaliatory.  (Resp., 2; Br. in Supp. of Summ. J., 17-18.)  She is requesting declaratory and injunctive relief, back pay and benefits from the date of termination to reinstatement, compensatory damages, punitive damages, costs and attorney's fees, and equitable relief the court deems appropriate.  (Compl. 4-5.)

## III.  STANDARD OF REVIEW

This case is before the court on a summary judgment motion.  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(c), as amended December 1, 2007 (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law.")[5]   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Celotex*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family*

---

[5] Effective December 1, 2007, "[t]he language of Rule 56[was] amended . . . to make the rule[ ] more easily understood and to make style and terminology consistent throughout the rules. These changes . . . are stylistic only." Fed. R. Civ. P. 56 advisory committee notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and therefore, all cases citing the prior rule remain equally applicable to the current rule.

*Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). If the evidence on which the nonmoving party relies, however, "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose

a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (Plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment . . . ."). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

Thus, in cases where the evidence before the court is admissible on its face or can be reduced to admissible form and indicates there is no genuine issue of material fact, and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where

pleadings, evidentiary materials and affidavits before the court show there is no genuine issue

as to a requisite material fact).

## IV.  DISCUSSION

*A.*     ***Legal Framework for Carpenter's § 1981 and Title VII Claims***

Carpenter is alleging that because of her race, Regis denied her a promotion, offered

her disparate training as a manager, demoted her from a manager to a stylist, and finally,

terminated her employment, in violation of § 1981 and Title VII.[6]  Title VII and § 1981 "have

the same requirements of proof and use the same analytical framework"; the analysis of one

applies to the analysis of the other.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330

(11th Cir. 1998); *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014,

1015 n.1 (11th Cir. 2001) (per curiam) (noting that the prima facie framework for proof by

circumstantial evidence is the same for both).  A Title VII discrimination action brought for

disparate treatment on the basis of race requires proof of intentional discrimination.  *Cooper*

*v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004), *overrruled on other grounds*, *Ash v.*

*Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (per curiam).

The framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973), applies to claims proving discrimination by circumstantial evidence.  *Cooper*, 390

---

[6]  The court assumes, as the parties do, that § 1981 applies to Carpenter's employment
relationship.  Section 1981 provides for all persons to have the same right to "make and enforce
contracts," § 1981(a), which covers the "making, performance, modification, and termination of
contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual
relationship," § 1981(b).

F.3d at 723-24.  The plaintiff first must establish a prima facie case of discrimination.  *Id.* at 724-25.  To make out a prima facie case, a plaintiff must demonstrate that "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably."  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).   The defendant's showing of a "legitimate, non-discriminatory reason for the allegedly discriminatory act," however, can eliminate the presumption created by establishing a prima facie case.  *Cooper*, 390 F.3d at 725.  "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.'"  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  "'[T]he employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus.'"  *Id.* (quoting *Burdine*, 450 U.S. at 257).  Even a "subjective" reason for the employment decision will suffice as long as the employer "articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."  *Chapman v. Al Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) (listing examples of traits like "good judgment" and "tact" that "often must be assessed primarily in a subjective fashion").  "Personal qualities . . . factor heavily into employment decisions concerning supervisory positions," *id.* at 1033, and those criteria "only capable of subjective evaluation . . . . can be just as valid as objective reasons," *id.* at 1034.

12

Once the prima facie presumption is eliminated, to survive summary judgment, a plaintiff must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the reasons for the adverse employment decision were pretextual.[7] *Cooper*, 390 F.3d at 725. A plaintiff cannot "'establish pretext simply by showing that [he] is more qualified'" than the candidate who was hired. *Id.* at 732 (quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001)). "[F]ederal courts do not sit to second-guess the business judgment of employers. . . . [A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs*, 106 F.3d at 1543; *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair."). The plaintiff must meet the employer's legitimate reason "head on" and not by "simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Thus, to meet the evidentiary burden on pretext, the plaintiff must demonstrate "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (*en banc*)).

---

[7] The plaintiff must produce evidence sufficient to show pretext as to each legitimate reason the defendant offers in rebuttal. *See Chapman*, 229 F.3d at 1037 n.30 (recognizing Eleventh Circuit case law on this point and declining to rule on whether exceptions exist).

Pretext can be established, however, by demonstrating a *vast enough* disparity in qualifications. To establish pretext by comparing qualifications, the disparities "'must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Ash*, 546 U.S. at 457 (quoting *Cooper*, 390 F.3d at 732); *accord Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160 (11th Cir. 2006).[8] Pretext also can be shown by producing evidence of an employer's inconsistent statements.[9] *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998); *see also Combs*, 106 F.3d at 1538.

The *McDonnell Douglas* framework also applies to establishing by circumstantial evidence a claim of retaliation under the opposition or participation clause of Title VII. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993). Title VII prohibits discrimination against any employee who (1) "has opposed any practice made an unlawful employment practice by this [title]" (opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]" (participation clause). 42 U.S.C. § 2000e-3(a). To succeed under the opposition

---

[8] In 2006, the Supreme Court noted with approval this standard from *Cooper*. *See Ash*, 546 U.S. at 457-58; *Drakeford v. Ala. Coop. Extension Sys.*, 425 F. Supp. 2d 1274, 1276 (M.D. Ala. 2006) (Albritton, J.). The Court declined to expressly articulate a more specific standard in resolving that case, *Ash*, 546 U.S. at 458, but the Eleventh Circuit has applied this standard since *Ash*, explicitly noting that *Ash* approved it, *see Brooks*, 446 F.3d at 1163.

[9] In a recent unpublished opinion, the Eleventh Circuit required employers' reasons to be "fundamentally inconsistent in order to constitute evidence of pretext." *Phillips v. Aaron Rents, Inc.*, 262 F. App'x 202, 210 (11th Cir. 2008) (per curiam) (citing *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453 (11th Cir. 1997) (per curiam)).

14

clause, the plaintiff is not required to prove that the underlying discriminatory conduct she opposed was unlawful but only that she had a "reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). To succeed under the "participation" clause, "at a minimum, [the] employee must file a charge with the EEOC (or its designated representative) or otherwise instigate proceedings under the statute." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 n.2 (11th Cir. 2000). A prima facie case of retaliation under both clauses requires proof "(1) that [the plaintiff] engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). If the defendant comes forward with legitimate reasons for its action, the plaintiff must provide sufficient evidence that, if reasonably believed by the trier of fact, would prove by a preponderance of the evidence that those reasons are pretextual. *See Goldsmith*, 996 F.2d at 1163.

**B.    *Application to Regis's Employment Decisions***

**(1)    *Promotion***

Carpenter charges Regis with unlawful discrimination based on race because it promoted Kilgore over Carpenter for the position of Salon Manager. In its motion for summary judgment, Regis argues that Carpenter has "failed to dispute" its proffered reason for not promoting Carpenter, "that Kilgore was better qualified because of her superior

customer service skills."[10]    (Br. in Supp. of Mot. for Summ. J., 19.)   Regis offers unchallenged evidence of Kilgore's qualifications – that she had been with the company fifteen months intermittently and that Burdette had personally observed Kilgore's work and she had shown she had better customer services skills.  (Br. in Supp. of Mot. for Summ. J., 19-20.)  Furthermore, Regis offers evidence of at least one documented customer complaint against Carpenter prior to the promotion decision (Burdette Decl. Ex. 2).  Thus, a trier of fact could rationally conclude that discriminatory animus did not motivate Regis's decision.  That Kilgore had worked for the company longer than Carpenter, that Kilgore was more skilled based upon personal observations, and that there was a record of customer complaints against Carpenter are sufficient legitimate, non-discriminatory reasons for promoting Kilgore over Carpenter.

Carpenter has offered no evidence that disputes *Kilgore's* qualifications or that reveals Regis has been disingenuous about its reasons.  For example, Carpenter has offered no evidence of a complaint against Kilgore.  Carpenter is left to prove pretext by demonstrating a vast disparity between the parties' qualifications.  Carpenter's qualifications, however – that she has been with Regis seven months and that the customer complaints were not frequent or improperly handled by her (*see* Resp., 4) – fall far short of showing that she is better qualified than Kilgore, let alone that she is vastly more qualified.  Carpenter has failed

---

[10] For purposes of its summary judgment motion, Regis assumes Carpenter has satisfied the prima facie elements for her discrimination claim (Br. in Supp. of Mot. for Summ. J., 19); thus, the court will make the same assumption.

16

to proffer evidence that creates a genuine issue of material fact as to whether Regis's reasons for not promoting Carpenter were pretextual for a discriminatory animus.

*(2)   Training*

Carpenter charges Regis with unlawful discrimination based on race because Burdette offered Kilgore, a Caucasian, better training for the Salon Manager position than she offered Carpenter.   In its summary judgment motion, Regis argues that Carpenter's complaint is beside the point because she has produced no evidence that the "deficient training altered the terms or conditions of her employment or that it adversely affected her status as an employee in any way."  (Br. in Supp. of Mot. for Summ. J., 21.)  Though the Eleventh Circuit has never adopted a bright-line test for what effect discrimination must have on employment conditions in order to have to be actionable, "[n]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action."  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001).  When the plaintiff has failed to show that the training "'would [have] affect[ed] his salary, chances of promotion, ability to perform his job, etc.,'" the prima facie case fails for lack of an adverse employment action.  *Merriweather v. Ala. Dep't of Pub. Safety*, 17 F. Supp. 2d 1260, 1271 (M.D. Ala. 1998) (quoting *Bullock v. Widnall*, 953 F. Supp. 1461, 1473 (M.D. Ala. 1996), *aff'd*, 149 F.3d 1196 (11th Cir. 1998)), *aff'd*, 199 F.3d 443 (11th Cir. 1999).  For support that the training contributed to her demotion, Carpenter points to her deposition (Resp., 5), but it fails to support the point.  The quoted passage only states that Carpenter believes "race had a lot to do with me not being

17

given the position in the beginning and not being trained properly and then being demoted";
it says nothing about *if or how* the training affected the demotion, noting only that all three
employment actions had a common source in discrimination.  (Carpenter Dep. 205; *see*
Reply, 7.)  Carpenter has failed to allege an adverse employment action from her training,
a prima facie element of her case.

*(3)      Demotion*

Carpenter charges Regis with unlawful discrimination based on race because Burdette
demoted Carpenter from Salon Manager to stylist about a month into her managerial
promotion.  Carpenter has not challenged Burdette's reasons for demoting her aside from
arguing that Burdette hired Carpenter because "her hand was forced" and that Burdette then
effectively sabotaged her.  (Resp., 6.)  This accusation would be more credible if Carpenter
had rebutted Burdette's reasons for demoting her – that Carpenter violated time clock and
scheduling policies, that she scheduled fewer evening or weekends for stylists, and that she
frequented the salon without authorization.   Regis also offered a documented customer
complaint against Carpenter.  Carpenter completely failed to rebut this evidence.  She admits
to allowing non-employees in the service area; she presents no evidence in defense of her
time-keeping.  Her insistence that the demotion can be understood only as compounding the
prior discriminatory acts of failing to promote and deficient training only obfuscates the holes
in her argument for each adverse employment action.  She has offered no *evidence*, even in
her deposition, rebutting Regis's legitimate reasons for demoting her for customer complaints

18

and other misconduct.  The nonmovant has a favorable burden on summary judgment, but Carpenter has directed the court to no evidence contradicting Burdette's declaration and exhibits.  For that reason, Carpenter's demotion claim fails as well.

### (4) Termination as Discrimination

Carpenter charges Regis with unlawful discrimination based on race because Regis terminated her.  Regis argues that Carpenter has failed to point to any similarly-situated employees outside her class treated more favorably than Carpenter.  (Br. in Supp. of Mot. for Summ. J., 24.)  Regis also argues that Carpenter has failed to dispute its proffered non-discriminatory reason for discharge.  (Br. in Supp. of Mot. for Summ. J., 25.)  Regis offers both Alvarez's declaration describing the information that prompted Alvarez to terminate Carpenter and documented customer complaints in support of its production burden on legitimate, non-discriminatory reasons for the employment action.

The record provides sufficient reasons to justify a factfinder's conclusion that Regis was not motivated by discriminatory animus when it fired her.  *See supra* pp. 5-6.  Based on the evidence before her at the time of termination, Alvarez decided that she could rely on certain employees and not on Carpenter's statements during the internal investigation of her claims.

> When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true? . . .
>
> . . . [A]n employer is entitled to expect and to require truthfulness and accuracy from its employees in an internal investigation that is exploring possibly improper conduct in the business's own workplace. . . . And, in

19

carrying out its business and in making business decisions (including personnel decisions), the employer can lawfully act on a level of certainty that might not be enough in a court of law. . . . Therefore, an employer, in these situations, is entitled to rely on its good faith belief about falsity, concealment, and so forth. . . .

[The plaintiff] could properly be discharged based on [the defendant's] good faith belief that [the plaintiff] lied in an internal investigation.

*Total Sys. Servs., Inc.*, 221 F.3d at 1176 (footnote and citations omitted). Furthermore, upon investigating Carpenter's claim of unfair treatment, Alvarez was entitled to rely on the voluminous evidence of accumulated problems with Carpenter. Each complaint on the laundry list of complaints against Carpenter reinforced her misconduct. *See supra* pp. 5-6. Alvarez concluded that Carpenter had lied, that she had violated Regis policy, and that her conduct was adversely affecting the company.

Carpenter contends that basing a decision on the sexual conversation complaint, however, is pretextual because Regis already had reprimanded her for the action. (Resp., 6.) But this claim belies the reality that Alvarez had unearthed a plethora of complaints and instances of misconduct in addition to that complaint. It is not inconsistent to terminate an employee for an action that the company previously punished more lightly if that action is symptomatic of a later-discovered pattern of misconduct. Carpenter also points to the evidence of how she responded to the customer's complaint about the cancelled appointment. (Resp., 6.) Carpenter complained that she could not bring to the salon the required products and that she felt like she was being set up for an harassment case. (Carpenter Dep. Ex. 7.) The court finds, however, that Carpenter's response to the cancelled appointment does not

undermine Alvarez's good faith belief, based on the totality of the evidence before her, that it was in Regis's best interest to sever Carpenter's employment.

***(5) Termination as Retaliation***

Carpenter charges Regis with unlawful retaliation because Regis terminated her after Carpenter communicated to Edwards and Alvarez that she had called the EEOC about Regis's racial discrimination. (Resp., 9.) Regis argues that Carpenter did not engage in protected activity under either the participation or opposition clauses and that Carpenter has not proven a causal connection between the protected activity and her termination, both prima facie elements of her retaliation claim. (Br. in Supp. of Mot. for Summ. J., 27-30.) Regis further argues that Carpenter failed to rebut Regis's legitimate, non-discriminatory reasons for her discharge. (Br. in Supp. of Mot. for Summ. J., 31.) Assuming *arguendo* that Carpenter properly advanced a prima facie retaliation claim, it clearly fails for insufficient evidence supporting pretext. As discussed in the resolution of her termination claim, Carpenter has presented only a scintilla of evidence – that there was no reason to further punish her for the sexual conversation complaint, that she had some excuses for the cancelled appointment complaint, and that she told Alvarez of contacting the EEOC, though whether she even discussed *racial* discrimination with Alvarez is unclear – to rebut the fact that, based on the totality of the evidence before her at the time, Alvarez had legitimate reasons to terminate Carpenter. *See supra* pp. 19-21. Thus, regardless of the prima facie challenge,

Carpenter has not met her burden to rebut Regis's legitimate non-discriminatory reasons for terminating her employment.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 11) is GRANTED.  An appropriate judgment will be entered.

DONE this 13th day of November, 2008.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE